UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

MILTON ANTONIO PARADA CHAVEZ, (A 072-254-491),

Petitioner,

v.

MARKWAYNE MULLIN et. al.,

Respondents.

No. 1:26-cv-05229-TLN-CKD

FINDINGS & RECOMMENDATIONS

Petitioner is a federal immigration detainee who filed this habeas corpus action pursuant to 28 U.S.C. § 2241. The matter was referred to a United States Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302.

## I. Factual and Procedural History

### A. Immigration History

Petitioner, a citizen of El Salvador, first came to the United States in the early 1990s as a teenager, alone. ECF No. 1-4 at 2. Growing up in El Salvador during the civil war, Petitioner survived abuse by his mother and lived in extreme poverty. Id. He has departed and re-entered the U.S. several times under various circumstances but has not returned to El Salvador, his country of origin, since 1994. Id.

In March 1998 Petitioner was removed from the United States pursuant to an order of exclusion but re-entered in June 1999. ECF No. 6-2 at 1-4, 8. When immigration officials

discovered Petitioner's presence in the U.S. in April 2000, they reinstated the 1998 order. Id. at 5-9. Petitioner returned again in June 2000. Id. at 10. In October 2004, an immigration judge (IJ) entered another order of removal against Petitioner, who departed then returned approximately three months later in January 2005. Id. at 10-14. An IJ ordered Petitioner removed again in May 2005, and Petitioner returned again that same year. Id. at 17-19. After Petitioner was released from prison in 2020 for a criminal conviction (see sec. I.B., infra), U.S. Immigration and Customs Enforcement (ICE) reinstated the 2005 removal order. Id. at 19-20; ECF No. 1-4 at 3.

Each time Petitioner was removed, he went to Mexico rather than El Salvador. ECF No. 1-4 at 2. While living in Mexico between his 2020 removal and his last U.S. entry in 2023, Petitioner was kidnapped, beaten, drugged, sexually abused, and stabbed on multiple occasions. Id. at 4-7.

Fearing for his life in Mexico, Petitioner returned to the U.S. on October 5, 2023. ECF No. 1-4 at 7-8. U.S. Customs and Border Protection (CBP) officers detained Petitioner upon entry and initially placed him in expedited removal proceedings. ECF No. 6-1 at 2 (indicating that petitioner was "served with an M-444, I-860 pending asylum officer interview"). Petitioner was later served with a notice to appear in removal proceedings. Id. at 3. Petitioner admitted – and the IJ sustained – the charge of removability under 8 U.S.C. § 1182(a)(7)(A)(i)(I) and declined to designate a country of removal. The government initially recommended El Salvador, with Mexico in the alternative, but withdrew Mexico as an alternative country because Petitioner does not have lawful status there. ECF No. 1-7 at 2. On December 27, 2024, the IJ ordered Petitioner removed to El Salvador but granted deferral of removal under the Convention Against Torture (CAT). ECF No. 6-3 at 6. Petitioner waived appeal rights but the government appealed the IJ's decision to the Board of Immigration Appeals (BIA). Id. at 9. On October 3, 2025, the BIA vacated the IJ's grant of deferral of removal. Id. at 1-5. Petitioner filed a petition for review and motion to stay removal with the Ninth Circuit Court of Appeals on October 25, 2025. ECF No. 1-9 at 4. A temporary stay of removal is currently in effect. Id. Briefing was completed on July 6, 2026 and the matter is being considered for oral argument in October 2026. ECF No. 6 at 3; ECF No. 1 at 9.

/ / /

**B. Criminal History**

Petitioner's criminal history began in 1996 with a conviction under California Vehicle Code 10851 for vehicle theft. ECF No. 6-4 at 3. In 2003, Petitioner was convicted in two separate matters under Cal Veh. Code § 10801 for owning a "chop shop" and Cal. Penal Code § 487(d) for grand theft auto. Id. at 5-6, 15-17. In 2006, Petitioner was sentenced to 15 years in prison for convictions under Cal. Penal Code § 245(a)(2), assault with a firearm; § 12021(a)(1), possession of a firearm; § 12280(b), possession of an assault weapon; and § 496, receipt or sale of stolen property. Id. at 7, 13-14, 18-31.

Petitioner admits to having joined the MS-13 criminal gang while in prison in 2009. He renounced his membership in 2013 but received threats against his life from current members. ECF No. 1-4 at 3. During the last four years of incarceration, Petitioner attended rehabilitation programs and church regularly. Id.

**C. Procedural History**

On July 7, 2026, after two years and eight months of detention, Petitioner filed a petition for writ of habeas corpus, arguing that his prolonged detention is unlawful and violates his Fifth Amendment due process rights. ECF No. 1. Respondents aver that 8 U.S.C § 1231 governs Petitioner's detention, which is not indefinite, and that Petitioner has received the process he is due. ECF No. 6. In his traverse, Petitioner disputes the detention authority but asserts that his due process rights are invoked regardless of the applicable detention statute. ECF No. 7.

**II. Applicable Detention Authority**

The statutory framework governing immigration detention is complex. "Where a [noncitizen] falls within this statutory scheme can affect whether his detention is mandatory or discretionary, as well as the kind of review process available to him if he wishes to contest the necessity of his detention." Prieto-Romero v. Clark, 534 F.3d 1053, 1057 (9th Cir. 2008). Respondents assert that Petitioner's detention is governed by 8 U.S.C. § 1231 whereas Petitioner argues that § 1226(c) governs Petitioner's detention.

The detention of a noncitizen pending removal proceedings is governed by 8 U.S.C § 1226. While 8 U.S.C § 1226(a) allows the Attorney General to either detain *or* release noncitizens

while their removal proceedings are pending, § 1226(c) imposes *mandatory* detention on certain noncitizens including those who, like Petitioner, have been convicted of a crime involving moral turpitude or two or more offenses for which the aggregate sentence to confinement was five years or more. 8 U.S.C. § 1226(c)(1)(A); 8 U.S.C. § 1182(a)(2).

Once a final order of removal has been issued, detention is governed by 8 U.S.C § 1231. Detention is mandatory during the 90-day "removal period" following the entry of a final order of removal. See 8 U.S.C. § 1231(a)(1)-(2). "This 'removal period' begins on the latest of either (1) the date a noncitizen's 'order of removal becomes administratively final,' (2) the date of a court's final order, if the noncitizen's removal order is judicially reviewed and [the Ninth Circuit Court of Appeals] stays the noncitizen's removal, or (3) the date the noncitizen is released from criminal detention or confinement." Avilez v. Garland, 69 F.4th 525, 531 (9th Cir. 2023) (quoting 8 U.S.C. § 1231(a)(1)(B)(i)-(iii)).

Detention after the expiration of the removal period is governed by 8 U.S.C. § 1231(a)(6). "In particular, § 1231(a)(6) provides that after a 90-day 'removal period,' a noncitizen 'may be detained' or may be released under terms of supervision." Johnson v. Arteaga-Martinez, 596 U.S. 573, 575 (2022). After the 90-day removal period has elapsed, ongoing detention is only authorized for "four categories of people: (1) those who are 'inadmissible' on certain specified grounds; (2) those who are 'removable' on certain specified grounds; (3) those [DHS] determines 'to be a risk to the community'; and (4) those [DHS] determines to be 'unlikely to comply with the order of removal.'" Arteaga-Martinez, 596 U.S. at 578-79 (quoting 8 U.SC. § 1231(a)(6)).

Petitioner disputes that he is subject to a final order of removal while the Court of Appeals' stay of removal is in effect. Respondents argue that Petitioner is within the "removal period" because the underlying removal order is final, but that the stay of removal delays the removal period until the Ninth Circuit issues a final order on the petition for review.

The undersigned agrees that Petitioner is subject to a final order of removal, despite the pending petition for review of the BIA's reversal of the grant of deferral of removal. "A final order of removal includes all rulings that condition or extinguish the executive's authority to remove the person altogether, but not those rulings that merely condition or extinguish the

executive's authority to remove them in a certain manner. Navarrete v. Bondi, 170 F.4th 1214, 1223 (9th Cir. 2026). A grant of deferral of removal "does not merge into the final order of removal because the noncitizen can be removed notwithstanding" the order. Id.[1]

Both parties, however, misunderstand the effect of the petition for review and stay of removal on the removal period in this matter. **"**If the *removal order* is judicially reviewed *and* if a court orders a stay of the removal," the removal period begins on "the date of the court's final order." 8 U.S.C. § 1231(a)(1)(B)(ii) (emphasis added). Here, the first requirement of § 1231(a)(1)(B)(ii) is not met because Petitioner's application for deferral of removal under the CAT – *not his underlying removal order* – is under judicial review. "The beginning of the removal period is not delayed by *every* judicially entered stay, because the exclusive means for judicial review of a removal order is a petition for review filed with the appropriate court of appeals. . . . [T]he entry of a stay of removal for any other reason . . . does not prevent the removal period from beginning." Prieto-Romero, 534 F.3d at 1060 n.6 (citations omitted) (emphasis in original). Therefore, the "removal period" began on December 27, 2024, when the

---

[1] Respondent cites Johnson v. Guzman Chavez, 594 U.S. 523, 533-34 (2021) for the premise that Petitioner's removal order is final despite ongoing review of CAT relief because review of the CAT denial concerns destination and conditions of removal, not removability itself. ECF No. 6 at 3. They also mention Riley v. Bondi, 606 U.S. 259, 269 (2025) which held that a final administrative removal order – one issued to a noncitizen who is removable for having been convicted of an aggravated felony – is a final removal order and withholding-only proceedings do not disturb the finality of otherwise final removal orders. Both cases involve noncitizens subject to reinstated removal orders who were placed in withholding-only proceedings pursuant to 8 U.S.C. § 1231(b)(3). The Respondents' reliance on these cases implies an argument that one or more of the prior removals should be considered the final order of removal for the purposes of § 1231 detention. However, Petitioner, despite multiple reinstatements of prior removal orders, was initially processed for expedited removal pursuant to 8 U.S.C. § 1225(b)(1) then placed in § 1229 removal proceedings after, presumably, passing a credible fear interview. See ECF No. 6-1 at 2 ("[Petitioner] was served an M-444 [Information about Credible Fear Interview in Expedited Removal Cases], I-860 [Notice and Order of Expedited Removal] pending asylum officer interview and turned over to ICE-ERO.") The record is unclear as to why the government chose that route rather than reinstate any of the prior removal orders as permitted by 8 U.S.C. § 1231(a)(5). Nonetheless, because the government found it necessary for an IJ to determine removability during the 2024 proceedings, the undersigned will consider the December 27, 2024 removal order to be the relevant removal order for the purposes of determining when the removal period began.

IJ entered the removal order and Petitioner waived his appeal rights.[2] See 8 U.S.C. § 1231(a)(1)(B)(i). As Petitioner's order of removal has been administratively final for over a year and a half, the undersigned finds that the 90-day removal period has lapsed and Petitioner is therefore in the "post-removal period" under § 1231(a)(6), which permits – but does not mandate – detention. 8 U.S.C. § 1231(a)(6) ("a[] [noncitizen] ordered removed…*may* be detained beyond the removal period…") (emphasis added).

**III. Due Process**

In the initial petition, Petitioner raised a substantive due process claim challenging prolonged detention under § 1226(c). Respondents do not contend that Petitioner is detained under§ 1226(c). As the undersigned has found that § 1231(a)(6) governs Petitioner's detention, the undersigned will analyze Petitioner's due process claim under that lens.

The Supreme Court examined the constitutional limits of detention under § 1231(a)(6) in Zadvydas v. Davis, describing as "obvious" the "serious constitutional problem arising out of a statute that, in these circumstances, permits an indefinite, perhaps permanent, deprivation of human liberty without any" procedural "protection[s.]" 533 U.S. at 692 (2001). Zadvydas read an implicit due process limitation into the immigration statute governing the removal of noncitizens subject to a final order of removal in order to avoid serious constitutional problems. The Supreme Court reasoned that "the Due Process Clause applies to all 'persons' within the United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent." Zadvydas, 533 U.S. at 693. As a result, "once [a noncitizen's] removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute." Zadvydas, 533 U.S. at 699.

In order to establish a uniform standard for determining when ongoing detention crosses constitutionally acceptable limits, the Court recognized a presumptively reasonable six month period of detention. Zadvydas, 533 U.S. at 701. Petitioner has been detained for nearly three years, well over the six-month presumptively reasonable period.

---

[2] The government's appeal to the BIA does not affect the finality of the removal order, as the appeal challenged the grant of deferral of removal, not the order of removal. See ECF No. 6-3 at 3.

Where, as here, § 1231 detention has become prolonged, the Court then turns to whether removal is reasonably foreseeable. Zadvydas, 533 U.S. at 699. If a noncitizen "provides a good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." Id. Here, Petitioner is subject to a final order of removal to El Salvador, but whether Petitioner will ultimately be removed to El Salvador depends on the outcome of the pending petition for review.

Several circuits have determined that Zadvydas relief is not available to noncitizens subject to final orders of removal where the only impediment to their removal is their appeal of the removal order. See Castaneda v. Perry, 95 F.4th 750, 757-58 (4th Cir. 2024) ("[O]ngoing withholding-only proceedings, even lengthy ones, simply do not present the same risk of 'indefinite and potentially permanent detention' at issue in Zadvydas. Stated differently, ongoing withholding-only proceedings do not, standing alone, cast doubt on the foreseeability of a[] [noncitizen]'s removal in the future."). See also G.P. v. Garland, 103 F.4th 898, 902 (1st Cir. 2024); Martinez v. Larose, 968 F.3d 555, 565 (6th Cir. 2020). Although the Ninth Circuit has not decided this issue within the context of 8 U.S.C. § 1231(a)(6) specifically, district courts within the Ninth Circuit have agreed with the above-referenced circuit decisions. See, e.g., Paez v. Scott, No. 2:26-cv-01144-LK, 2026 WL 1396111 at *4 (W.D. Wash. May 19, 2026) ("The stay resulting from [Petitioner's] ongoing appeal does not create a 'removable-but-unremovable limbo' because 'ongoing withholding-only proceedings alone are insufficient to demonstrate that removal is no longer reasonably foreseeable.... To reach a contrary result would be to go against the clear weight of authority.") (citations omitted). The procedural posture of the instant case is a bit different than in the above-referenced cases. Here, an IJ deferred Petitioner's removal to El Salvador, and the government appealed the grant of deferral of removal. Nonetheless, the undersigned finds that the ongoing litigation does not necessarily place Petitioner in the same "removable-but-unremovable limbo" as were the petitioners in Zadvydas. Should the Court of Appeals ultimately rule in favor of the government, there is no impediment to Respondents executing the order of removal to El Salvador.

If, however, the Court upholds the grant of deferral of removal, Petitioner may not be

removed to El Salvador and “decisions about [Petitioner]’s release shall be made according to part 241 of this chapter.” 8 C.F.R. 1208.17(c). Regulations issued in the wake of Zadvydas require internal review of the ongoing detention of a noncitizen subject to a final removal order. See Continued Detention of Aliens Subject to Final Orders of Removal, 66 Fed. Reg. 56967-01, 2001 WL 1408247 (Nov. 14. 2001). After the 90-day removal period has expired, a noncitizen may request a review of whether there is a “significant likelihood of removal to the country to which he or she was ordered removed, or to a third country, in the reasonably foreseeable future.” 8 C.F.R. § 241.13(a). If it is determined that there is no significant likelihood of removal in the reasonably foreseeable future, the government “shall promptly make arrangements for the release of the [noncitizen] subject to appropriate conditions.” 8 C.F.R. § 241.13(g)(1).

**IV. Recommendation**

Accordingly, IT IS HEREBY RECOMMENDED that:

1. Petitioner's application for a writ of habeas corpus be DENIED.
2. The denial be WITHOUT PREJUDICE so that Petitioner may retain the ability to pursue habeas relief should removal no longer be reasonably foreseeable or Respondents do not adhere to the appropriate custody review procedures set forth in 8 C.F.R. § 241.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within seven (14) days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned “Objections to Magistrate Judge’s Findings and Recommendations.” Any response to the objections shall be filed and served within seven (14) days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court’s order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated: August 18, 2026

CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE

3 para5229.imm.fnr